IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-27-KS

| | |
|---|---|
| SCOTT N. CAMPBELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARTIN O'MALLEY, Commissioner )<br>of Social Security Administration, )<br>)<br>Defendant.[1] ) | **ORDER** |

This matter is before the court on the parties' briefs pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Scott N. Campbell ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits (DIB). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the parties' briefs, the court affirms the Commissioner's decision.

## STATEMENT OF THE CASE

Plaintiff applied for a period of disability and DIB on August 3, 2020, with an alleged onset date of May 1, 2019. (R. 12, 191–92.) The application was denied

---

[1] Martin O'Malley became Commissioner on December 20, 2023, and is therefore substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

initially and upon reconsideration, and a request for hearing was filed. (R. 112, 79–80, 103–04.) A video hearing was held on March 10, 2022, before Administrative Law Judge ("ALJ") James E. Williams, who issued an unfavorable ruling on April 27, 2022. (R. 9–73.) On November 22, 2022, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On January 20, 2023, Plaintiff initiated this action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*

2

v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the

3

Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015).

III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found that Plaintiff last met the insured status requirements of the Act through June 30, 2020. (R. 15.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 1, 2019, the alleged onset date, through the date last insured. (*Id.*) Next, the ALJ determined Plaintiff had, through the date last insured, the severe impairments of degenerative disc disease, ankylosing spondylitis, osteoarthrosis, obesity, chronic obstructive pulmonary disease (COPD), and Lyme disease. (*Id.*)

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 15.) The ALJ expressly considered Listings 1.15, 1.16, and 1.18. (R. 16.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had, through the date last insured,

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] would be limited to frequent reaching overhead with the bilateral upper extremity; frequent climbing of ramps and stairs; occasional climbing of ladders, ropes, or scaffolds; frequent stooping, kneeling, crouching, and crawling; occasional exposure to

4

> unprotected heights and moving mechanical parts; and occasional exposure to dust, odors, fumes and pulmonary irritants.

(R. 16.) In making this assessment, the ALJ stated that he considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. § 404.1529, and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence." (R. 16, 21.) At step four, the ALJ concluded that Plaintiff is not able to perform any past relevant work. (R. 22.) At step five, the ALJ determined, based upon Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy through the date last insured that Plaintiff could have performed, namely: cashier (DOT #211.462-010), information clerk (DOT #237.367-018), and garment folder (DOT #369.687-018). (R. 23–24.) The ALJ concluded that Plaintiff was not disabled under the Act from May 1, 2019, through the date last insured. (R. 24.)

## IV. Plaintiff's Argument

Plaintiff contends the ALJ failed to properly evaluate the medical opinion of treating providers Dr. Payson Thompson, M.D., and family nurse practitioner Stephanie Brinson. (Pl.'s Br. [DE #16] at 6–12.) This medical opinion stated significantly more limited functional abilities than those assessed in the RFC by the ALJ. (*See* R. 764–68 (Thompson-Brinson opinion).) The Commissioner contends the ALJ properly evaluated this medical opinion. (Comm'r's Br. [DE #18] at 7–16.) For the reasons explained below, the court agrees with the Commissioner.

When evaluating medical opinions, the ALJ must consider factors set forth in 20 C.F.R. § 404.1520c(b), (c)(1)–(5). *See generally Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (summarizing the medical opinion evaluation process for disability claims filed after March 27, 2017). "The ALJ is not required to explain how she considered each of the relevant factors; instead, when articulating her finding about whether an opinion is persuasive, the ALJ need only explain how she considered 'the most important factors' of supportability and consistency." *Corbin v. Kijakazi*, No. 2:20-CV-60-M, 2022 WL 990487, at *2 (E.D.N.C. Mar. 31, 2022). "Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes*, 70 F.4th at 212. Generally, the ALJ must explain how the evidence led to his conclusions. *Arakas*, 983 F.3d at 95 ("To pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." (quoting *Monroe*, 826 F.3d at 189)); *see also Mascio*, 780 F.3d at 637 (remand is necessary when a reviewing court is "left to guess about how the ALJ arrived at his conclusions").

ALJ Williams evaluated the Thompson-Brinson opinion in conformity with 20 C.F.R. § 404.1520c(b), (c)(1)–(5). As to the supportability factor, ALJ Williams explained that the opinion "appears in box-check format without significant analysis or citation to the record." (R. 22.) Review of the opinion leads the court to conclude that this assessment of the Thompson-Brinson opinion is not unsupported by

6

substantial evidence—there is no reference to any treatment notes or records in the opinion and the narrative notes do not explain how the medical providers arrived at their conclusions regarding Plaintiff's functional limitations. (*See* R. 764–68.) The ALJ's assessment is also not contrary to the applicable regulation. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be.").

As to the consistency factor, ALJ Williams explained that the restrictions in the Thompson-Brinson medical opinion were "not consistent with the evidence of record, including [Dr. Thompson and Nurse Brinson's] own office records, which showed [Plaintiff]'s physical examinations were generally unremarkable and [Plaintiff]'s overall treatment conservative." (R. 22 (citing R. 352, 358, 436, 442, 467, 486–87, 660–61, 691).) All but one of the ALJ's citations are to treatment notes from medical providers other than Dr. Thompson or Ms. Brinson. (R. 691 (November 2020 Brinson treatment note).)

Plaintiff argues that this explanation from the ALJ is "simply not the case" because the record contains objective evidence of spinal stenosis, ankylosing spondylitis, pain, swelling, and limited range of motion in multiple areas. (Pl.'s Br. at 11.) Further, Plaintiff faults the ALJ's analysis for referencing treatment records from appointments not primarily focused on Plaintiff's musculoskeletal issues. (*Id.*) Plaintiff argues that the ALJ's analysis of the consistency factor "is without support when fairly looking at the longitudinal evidence of record." (*Id.*)

7

Plaintiff's request that this court "fairly look at the longitudinal evidence of record" is tantamount to a request for this court to re-weigh the evidence. But this court is not permitted to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for the ALJ's. *Craig*, 76 F.3d at 589 (quoted in *Arakas*, 983 F.3d at 95); *see also Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) (holding that the ALJ's decision must be sustained even if the reviewing court disagrees, so long as it is supported by substantial evidence because "the duty to resolve conflicts in the evidence rests with the ALJ"). The ALJ acknowledged and considered the objective evidence referenced by Plaintiff. (*See* R. 17–18.) That the ALJ reached a different a conclusion as to how this evidence impacts the evaluation of the Thompson-Brinson medical opinion is of no moment.

Having reviewed the record, the court finds that substantial evidence supports the ALJ's findings and the ALJ's decision was reached through the application of the correct legal standards. Accordingly, the court affirms the Commissioner's decision.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED.

This 4th day of March 2024.

_____
KIMBERLY A. SWANK
United States Magistrate Judge